| From: | Glaberson, Evan (USANYW) |
|---|---|
| To: | esoehnlein_lippes.com; NYWDml_Sinatra_PpO |
| Cc: | Kristen Flick |
| Subject: | RE: United States v. Martinez - June 19 Letter |
| Date: | Friday, July 28, 2023 6:25:35 PM |
| Attachments: | image001.png |
| | 2023.07.28 Government Response to July 25 email.pdf |

---

## CAUTION - EXTERNAL:

Judge Sinatra,

Please find attached the government's response to Mr. Soehnlein's July 25, 2023 email.
Have a good weekend.

**Evan K. Glaberson, Assistant United States Attorney**
**Narcotics & Organized Crime Section**
U.S. Attorney's Office/WDNY
138 Delaware Avenue
Buffalo, New York 14202
(office) 716.843.5871 | (cell) 716.462.1738 | (fax) 716.551.3196
Email: Evan.Glaberson @usdoj.gov

**From:** Eric M. Soehnlein <esoehnlein@lippes.com>
**Sent:** Tuesday, July 25, 2023 12:32 PM
**To:** sinatra@nywd.uscourts.gov
**Cc:** Kristen Flick ███████████████████████; Glaberson, Evan (USANYW)
<EGlaberson@usa.doj.gov>
**Subject:** [EXTERNAL] United States v. Martinez - June 19 Letter

Your Honor:

I provide the following email in accord to our agreement on the record on June 19, 2023 regarding my letter to Your Honor dated June 18, 2023.

### I. Background

On July 5, 2023 the Government filed a motion for a status conference regarding a potential conflict of interest between Mr. Martinez and me. The Government's motion referenced protected materials that were recovered from Mr. Martinez's jail cell as well as other actions he had allegedly engaged in involving those materials. The motion sought a hearing on the issue of whether there was a conflict between Mr. Martinez and I, and it sought a declaration from Mr. Martinez and from me regarding any other disclosure of protective material that may have been made.

The Court scheduled the status conference for July 10. At that time, I moved to voluntarily withdraw from representing Mr. Martinez. The Court granted that motion, subject to finding a new CJA attorney to represent Mr. Martinez. The Court also invited me —but did not compel me -- to address the factual assertions made in the Government's underlying motion. The docket entry of the Court appearance (Dkt. 137) demonstrates the Court did not Order me to respond to the Government's motion, and it did not Order me to respond to any formal inquiry from the Court. Rather, the Court afforded me an opportunity to investigate the issue and report to the Court on a voluntary basis. I accepted the invitation so that I could provide clarity to Your Honor. I did not and do not view the letter as a response to any motion in Mr. Martinez's case or as a response to any formal demand from the Court.

I voluntarily provided my letter to the Court on July 18, 2023, which referenced the facts and

circumstances of law office failure that may have led to the disclosure of protected information to Mr. Martinez.

### II. The Letter is not a "Judicial Document" Subject to Disclosure

The duty to docket materials provided to Court is only triggered when the item at issue is a "judicial document" to which the public has a presumptive right of access. *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 134 (2d Cir. 2017). The Second Circuit has held that for a document to be considered a "judicial document," and hence subject to this right of access, it must, in addition to being "physically filed" with the court, "be relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995).

We do not believe the letter qualifies as a "judicial document" subject to such disclosure. Without question, the document was not provided as a response on behalf of Mr. Martinez. It also was not provided in response to any formal proceedings of the Court undertaken in accord to Fed. R. Crim 42, which requires specific and well-articulated notice requirements that were not utilized in this matter. *See* Fed. R. Crim. P. 42(a)(1). In this regard, the information voluntarily shared with the Court is akin to letters submitted on behalf of defendants in connection with sentencing, which are not judicial documents and that therefore are not subject to public disclosure. *See United States v. Gotti*, 322 F.Supp.2d 230 (E.D.N.Y. 2004).

This matter is in sharp contrast to the *Gannett Media Corp. v. United States of America* case we anticipate the Government will rely upon. There, the Court had reviewed the conduct of the attorneys which was subject of motion practice brought on behalf of defendants. The Court's analysis of that conduct had a material impact on the outcome of the case. More critically, in that case the Court issued formal Orders directing briefing and responses on the part of the United States Attorney's Office and other attorneys in the case.

I have searched the case law. I cannot find an instance where a submission voluntarily sent to the Court that was not relied upon in the defendant's case in chief was docketed and disclosed to the public. Accordingly, I believe the instruction of Rule 57 (b) applies, directing that a judge "may regulate practice in any manner consistent with federal law..." that he sees fit where there is no controlling law. Here, I believe not publicly disclosing the letter is the appropriate result. The letter describes the inner workings of my law firm and the conduct of law firm staff. It does not have any bearing on the facts and circumstances of Mr. Martinez's case, and it is not in response to any motion in the case or formal inquiry from the Court.

### III. Even if the Letter is a Judicial Document, It Should Be Sealed and Not Be Publicly Disclosed

Even if the Court finds that the letter is a "judicial document," the law should still counsel the Court to shield the letter from public access.

Analysis of this issue begins with the Second Circuit decision in *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995). There, the Court started its analysis by restating the presumption for public access to documents in federal cases, and then went on to note the "unthinkable" result of providing public access to every item or document involved in federal criminal litigation.

Attempting to reason to a common-sense solution, the Second Circuit proposed a sliding scale regarding what documents must be publicly disclosed: "we believe that the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." 71 F.3d at 1049. The Court went on to note values of law enforcement concern, judicial efficiency and

privacy interests. Analysis of those factors cuts against disclosure.

With respect to law enforcement concern, the Government has indicated that there is "no grand jury aspect" to the allegations set forth in the motion at Dkt. 135. In the same vein, undersigned does not believe there is any information in the June 18 letter that impacts, impairs or weighs on law enforcement interests in this case.

With respect to judicial efficiency, we believe judicial efficiency is not impacted on this issue regardless of whether or not the letter is handled ex parte or publicly disclosed.

Privacy interests cut strongly in favor of shielding the letter from public access. Much of the letter is focused on the inner workings of my law firm. Of necessity, the letter mentions names of individuals who are staff at my law firm and staff at the federal district court. The conduct of those individuals is generally considered private and is not typically discussed in federal court – certainly not publicly. Disclosing the names of those individuals not only risks undeserved personal embarrassment, but is also likely to have a chilling effect on other law offices and support staff that engage in assigned criminal defense work in the federal courts. Simply put, we believe the privacy interest is strong.

### IV. Conclusion

For the reasons set forth above, and for the reasons articulated on the record on June 19, we respectfully request that the June 18 letter not be docketed in Mr. Martinez's case. We thank the Court for its time and attention.

**Eric M. Soehnlein**
Partner



50 Fountain Plaza, Suite 1700
Buffalo,NY 14202-2216

ph: 716.853.5100ext. 1275|d: 716.218.7565|fx: 716.853.5199
esoehnlein@lippes.com|lippes.com
LinkedIn   Twitter   Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the email message. Unauthorized use, dissemination, distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an intended recipient, please notify the sender immediately, delete the message from your email system, and destroy any other copies in your possession.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



**U.S. Department of Justice**

*United States Attorney*
*Western District of New York*

---

*Federal Center*                                          *716/843-5700*
*138 Delaware Avenue*                                      *fax 716/551-3052*
*Buffalo, New York  14202*        *Writer's Telephone:   716/843-5871*
                                   *Writer's fax:   716/551-3052*
                                   *Evan.Glaberson@usdoj.gov*

July 28, 2023

The Honorable John L. Sinatra
United States District Judge
Western District of New York
By Email: sinatra@nywd.uscourts.gov

   Re:  Response to July 25, 2023 Email

Dear Judge Sinatra:

   The government hereby responds to Eric Soehnlein's July 25, 2023 email requesting that his July 18, 2023 letter submitted to the Court *ex parte* and under seal not be docketed. For the reasons set forth below, the government requests that, in the first instance, the Court allow the government access to the unredacted letter. [1] Without knowing what Mr. Soehnlein's explanation is for why his former client, Luis Martinez, possessed protected materials and information for cooperating government witnesses, the government cannot assess the credibility of that explanation and thus, whether any further action regarding the violation of the protective order is appropriate.

   The materials Mr. Soehnlein disseminated in violation of the protective order expose the identity and testimony of individuals, both defendants and witnesses, who are cooperating with the government in the investigation of, not only Luis Martinez, but of other charged and uncharged individuals engaged in drug trafficking in and around Jamestown, NY. The damage done by the dissemination of those materials cannot be undone.

   As detailed in the government's Motion to Schedule a Status Conference to Address Potential Conflicts, Doc. No. 135, a significant volume of protected material was improperly disseminated, including grand jury testimony, unredacted proffer reports for cooperating defendants and witnesses, and sealed plea agreements with cooperation sections. *Id.* at 8-9. There is no question that these protected materials came from Mr. Soehnlein in violation of the Court's protective order.   There is also no question that, however the material got to the defendant, Mr. Soehnlein is responsible.

---

[1] To the extent the letter contains names of individuals who are staff at Mr. Soehnlein's law office, as stated in Mr. Soehnlein's July 25, 2023 email, those names can be redacted.

The only question that remains is how the violation occurred.   How was it that such serious information made it to the hands of an incarcerated defendant?   And how was it that Mr. Soehnlein did not realize that the file folders of protected materials were missing, much less that they were in the hands of his client?   According to Mr. Soehnlein, he did not know the protected materials were not in his possession until a phone call with the undersigned in June 2023. *See* Transcript of July 10, 2023 Status Conference, at 3. How does that statement fit with the explanation set forth in his July 18, 2023 letter?   The government has the right to review Mr. Soehnlein's proffered explanation. There may be reasons the government can provide for why such proffered explanation is incorrect or impossible.   The Court should have the benefit of the government's input, which input cannot be provided without the government having access to the unredacted letter.

Moreover, as the Court is aware, e*x parte* communications with the Court are disfavored, particularly in the criminal context.   *United States v. Rechnitz*, No. 20-1011-cr, 2023 U.S. Dist. LEXIS 19054, *34-35 (2d Cir., June 2, 2023) (internal citations omitted). They are the "exception rather than the rule" and require particular justification.  *Id. Ex parte* communications should only occur where they are authorized by law, for example when dealing with classified information, or when the circumstances require it for scheduling, administrative or emergency purposes, or with the consent of the parties to assist in settling or mediating a dispute. *Id.* Mr. Soehnlein has offered no justification, let alone a "particular justification" to overcome the strong presumption against *ex parte* communications.

The Second Circuit has routinely held that the "preferred way to proceed in criminal cases is under the assumption that 'nothing is off the record' … [because a] comprehensive record, particularly in a criminal case, is a paramount feature of fair proceedings.   A full record not only protects the rights of the parties and enables future proceedings … but also preserves and promotes transparency, a feature 'pivotal to public perception of the judiciary's legitimacy and independence.'" *Id.* (quoting *United States v. Amico*, 486 F.3d 764, 779 (2d. Cir. 2007), and *United States v. Aref*, 533 F.3d 72, 83 (2d. Cir. 2008)).   Here, if the Court accepts Mr. Soehnlein's explanation without allowing the government to review the letter and respond, the Court has decided this issue on an incomplete record.   Shielding the letter from the government fails to protect the government's rights and fails to ensure transparency on such an important issue.

The stakes are high. The dangers resulting from defense violations of protective orders are very real. Whether intentional, reckless, or negligent, the improper dissemination of protected materials can have life and death consequences.   Here, cooperating defendants have been contacted by multiple individuals regarding their cooperation with the government. Some of those individuals are incarcerated. Others are people who live in the same community.   Improper dissemination can also negatively impact the government's ability to prosecute others who commit crimes. Witnesses and cooperating defendants in unrelated cases have learned of the dissemination of these materials and now express valid reservations about cooperating with the government. Moreover, there is a real possibility that not all the protected materials have been recovered, such that the full extent of the harm caused by Mr. Soehnlein's dissemination remains unknown.

Once the government has access to Mr. Soehnlein's unredacted letter, it will be able to better assess whether further action should be taken to pursue the violation of the protective order. It will also be able to assess whether, in fact, the letter should be filed on the public docket. Without reviewing the letter, there is no way for the government to assess whether the vague privacy interests cited in Mr. Soehnlein's July 25th email are sufficient to outweigh the strong presumption of public access to judicial documents. *See Gannett Media Corp. v. United*, 22-2160, 2022 U.S. App. LEXIS 35099, *5 (2d Cir. 2022) (unpublished) (internal citations omitted); *See also Olson v. MLB*, 29 F.4th 59, 69 (2d Cir. 2022). The government respectfully reserves its right to address both issues once it has an opportunity to review the letter.

Very truly yours,

TRINI E. ROSS
United States Attorney

BY:   Evan K. Glaberson
Assistant United States Attorney

| | |
|---|---|
| **From:** | Eric M. Soehnlein |
| **To:** | Kristen Flick; Glaberson, Evan (USANYW) |
| **Subject:** | Re: Submissions re July 18, 2023 letter from E. Soehnlein |
| **Date:** | Friday, August 4, 2023 2:51:23 PM |
| **Attachments:** | image001.png |
| | image528471.png |

**CAUTION - EXTERNAL:**

Thank you, Kristen. I will provide a redacted version next week.

Get Outlook for iOS

**Eric M. Soehnlein**
Partner



50 Fountain Plaza, Suite 1700
Buffalo,NY 14202-2216

ph: 716.853.5100ext. 1275|d: 716.218.7565|fx: 716.853.5199
esoehnlein@lippes.com|lippes.com
LinkedIn // Twitter // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the email message. Unauthorized use, dissemination, distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an intended recipient, please notify the sender immediately, delete the message from your email system, and destroy any other copies in your possession.

**From:** Kristen Flick ████████████████████████
**Sent:** Friday, August 4, 2023 1:52:26 PM
**To:** Eric M. Soehnlein <esoehnlein@lippes.com>; Glaberson, Evan (USANYW)
<Evan.Glaberson@usdoj.gov>
**Subject:** Submissions re July 18, 2023 letter from E. Soehnlein
Eric and Evan:
Judge Sinatra asked me to convey the following to you both:
He reviewed both sides' views—communicated in a July 25, 2023 email from Eric and a July 28, 2023 letter sent via email from Evan—regarding Eric's July 18, 2023 letter.
Judge Sinatra had solicited the July 18, 2023 letter from Eric to evaluate whether the Court ought to initiate proceedings under Federal Rule of Criminal Procedure 42. As the Judge expressed at the July 19, 2023 status conference, the July 18 letter from Eric seems to have alleviated Judge Sinatra's concerns.
Nevertheless, the Government articulated valid concerns regarding its access to the substance of the July 18 letter. Judge Sinatra therefore asks Eric to provide a redacted version of his July 18 letter to Evan. Permissible redactions include, for example, content related to client communications and confidences, as well as employee names. Judge Sinatra will determine the next steps, if any, after Evan receives and reviews the redacted letter.
Thank you,

Kristen



**Kristen E. Flick**
*Law Clerk to Hon. John L. Sinatra, Jr.*
*Western District of New York*
Robert H. Jackson United States Courthouse
2 Niagara Square, Buffalo, NY 14202
Direct: ███████████ Chambers: 716-551-1640
██████████████████

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| | |
|---|---|
| **From:** | Eric M. Soehnlein |
| **To:** | Glaberson, Evan (USANYW) |
| **Cc:** | Kristen Flick |
| **Subject:** | Martinez Letter Redacted |
| **Date:** | Monday, August 7, 2023 9:36:33 AM |
| **Attachments:** | image076383.png |
| | Redacted Letter.pdf |

**CAUTION - EXTERNAL:**

# Eric M. Soehnlein
Partner



50 Fountain Plaza, Suite 1700
Buffalo,NY14202-2216

ph: 716.853.5100ext. 1275|d: 716.218.7565|fx: 716.853.5199
esoehnlein@lippes.com|lippes.com
LinkedIn // Twitter // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the email message. Unauthorized use, dissemination, distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an intended recipient, please notify the sender immediately, delete the message from your email system, and destroy any other copies in your possession.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



July 18, 2023

**VIA E-MAIL**
**EX PARTE AND UNDER SEAL**
John L. Sinatra, Jr.
United States District Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

      Re:   *United States v. Luis Martinez*
           Dkt. 135

Your Honor:

As discussed in Court on June 10, I provide the following information with regard to the Government's motion at Dkt. 135 in the above case.

I was wholly unaware of this issue until I was alerted to it by the Government a few weeks ago. Upon learning of the Government's allegations in this matter, I reviewed my file and the steps undertaken to prepare this case for trial and sentencing. While I do not have personal knowledge of any disclosure, my review leads me to the conclusion that it is likely that protected materials were provided to Mr. Martinez from my law firm.

To the extent protected material may have been shared with Mr. Martinez, it was inadvertent. It was not intentional. It certainly was not willful. And at no time did my thoughts or actions intend for any disrespect or disobedience to the Court or to its any of its Orders. I deeply regret these circumstances, and, as is set forth below, I have undertaken steps to diminish the potential for inadvertent disclosure in the future.

**Eric M. Soehnlein** | Partner | esoehnlein@lippes.com
50 Fountain Plaza, Suite 1700, Buffalo, NY 14202   **Phone:** 716.853.5100   **Fax:** 716.853.5199   **lippes.com**

New York: Albany, Buffalo, Long Island, New York City, Rochester   Florida: Jacksonville   Illinois: Chicago
Ontario: Greater Toronto Area   Texas: San Antonio   Washington, D.C.



## I.    Relevant Background

Mr. Martinez was charged by complaint on May 5, 2021.[1]  He was represented by
Carla Benz from the Federal Public Defender at that time.  Mr. Martinez was
indicted on May 27, 2021, and the case was referred to Magistrate Judge Roemer for
pre-trial proceedings.  On July 15, 2021, Ms. Benz moved to withdraw from the case,
citing a conflict within her office.  CJA attorney Ian Harrington was assigned to
represent Mr. Martinez on July 22, 2021.  On Mr. Martinez's behalf, Mr. Harrington
made a number of motions to adjourn scheduling deadlines to file pretrial
motions.  Mr. Harrington ultimately filed pretrial motions on March 28, 2022.

On May 11, 2022 Mr. Harrington moved to withdraw from representing Mr.
Martinez, citing a new job and his leaving the CJA panel.  I was assigned to
represent Mr. Martinez the following day.  I promptly reserved Mr. Martinez's rights
to file additional pretrial motions.

I was Mr. Martinez's third assigned attorney, coming into the case after several
years.  Without disclosing the content of attorney-client communications, Mr.
Martinez had little faith in the process or in my abilities. Our relationship became
more challenging because of these issues.

The case was originally set for trial to commence on December 6, 2022.  In accord to
the Court's schedule, I filed an exhibit list, proposed voir dire, jury instructions and a
pre-trial memorandum on November 14, 2022.  On November 8, 2022, however, █████
████████████████████████████████████████ entered into a plea agreement and
chose to cooperate against Mr. Martinez at trial.

Because of ███████████'s cooperation, I also renewed my efforts to discuss a plea
with Mr. Martinez and the Government.

Due to ████████████'s cooperation against Mr. Martinez, the Government filed a
Superseding Indictment on November 16,2022.  The focus of the new charges were to
hold Mr. Martinez accountable for the firearm that was recovered from Mr.

---

[1] Below I detail my impression of my relationship with Mr. Martinez.  I believe this background is
critical to understanding actions taken by the Government and by me in handling this case,
particularly in the period where it is likely protected materials were disclosed to Mr. Martinez.  To be
clear, however, Mr. Martinez is not responsible for any inadvertent disclosure from my office.



McKeithan at the time they were arrested together. As a result, the trial date was adjourned to January 24, 2023.

## II.    The Lead Up to the January Trial Date

The charges against Mr. Martinez were serious.  In an already difficult case, the proof against Mr. Martinez had become much more compelling.  Because of ███ ████████'s cooperation, the risk of Mr. Martinez being held accountable for the firearm in the case became much more likely, escalating the amount of prison time he faced.  In the following weeks, the Government disclosed additional cooperating witnesses who were to testify against Mr. Martinez.

I renewed my efforts to convince Mr. Martinez to engage in plea negotiations, and I renewed my efforts to discuss a potential resolution with the Government.  Mr. Martinez's attitude remained unchanged.  I was so troubled by aspects of my relationship with Mr. Martinez, I started memorializing my conversations with him, with particular attention to conversations regarding his decision to take the case to trial and reject various plea offers.

Both Mr. Glaberson and I agreed that the case should resolve by plea.  In an attempt to facilitate a plea, we agreed that the Government would provide Mr. Martinez with a reverse proffer to preview the case against Mr. Martinez.  The Government hosted the reverse proffer on January 5, 2023.  In the reverse proffer, the Government showed Mr. Martinez materials it would introduce against him at trial, including protected materials and documents.  More importantly, the Government also discussed the testimony of cooperating witnesses and other members of law enforcement.  While the Government did not name the witnesses, it was clear that Mr. Martinez knew who these people were.  At the conclusion of the presentation, the Government warned Mr. Martinez not to reach out to any of the cooperating witnesses or to otherwise disclose what he had learned from the Government's presentation. ████████████████████████████████████████

Following the reverse proffer, several matters continued to be litigated leading to the trial date.  In our view, and critical to the case, was our ability to impeach the credibility of lead law enforcement officers who arrested Mr. Martinez in the past, various issues regarding DNA harvesting and expert testimony, and the credibility of



cooperating witnesses.  These issues were being litigated by motions in limine, while our DNA expert continued to provide us with information to assist in cross-examination with respect to whether or not Mr. Martinez's DNA was narcotics discovered at a search in the case.

### III.    Potential Disclosure on January 17, 2023



At the end of the day on January 12, 2023 I memorialized additional plea discussions I had had with Mr. Martinez.  I also finalized and filed amended jury instructions on behalf of Mr. Martinez.  In pertinent part, those instructions developed the law around what information and proof was necessary to hold Mr. Martinez accountable for the firearm in the case given ▮▮▮▮▮▮▮'s cooperation.

In the late afternoon on January 12, 2023, I informed my assistant, ▮▮▮▮▮▮▮, that I wanted to provide trial materials to Mr. Martinez the following Tuesday, January 17.  The purpose of this communication was to make sure the delivery would be an action item for her to accomplish on January 17, in accord to her standard practice.

It was my intention to provide Mr. Martinez with our pre-trial motion practice, memoranda regarding my conversations with our DNA expert, memoranda from our investigator on the case, memoranda documenting recent conversations I had with Mr. Martinez, our newly filed jury instructions, our exhibit list, and memoranda I generated regarding potential themes for opening statements and summation.  None of those materials are covered by the protective order, and all of those materials were critical to ensure Mr. Martinez was aware of what was going on in his case so that he could fully understand the risks of going to trial in this matter.

It's important to note that at this time January 17 was the soonest we could have the materials delivered to Mr. Martinez.  I knew there was not enough time in the day on January 12 to print and deliver the materials to the jail, and I knew that I had to be out of the office to handle a family matter involving my children on Friday, January 13, 2023, although I continued to work remotely.  The following Monday,



January 16, was the Martin Luther King, Jr. holiday, meaning our office staff was off and a delivery could not be made.

In the late afternoon of the same day, January 12, I asked several of my partners if they could meet on Tuesday, January 17 so that I could discuss and work through various trial issues with their input. Accordingly, ███████████████████████ ████████████████████████████████████████████████ from my office on Tuesday, January 17 at 1 p.m. to discuss trial strategy and to get their thoughts on various issues. Because I wanted to be respectful of their time, I committed to providing a summary of the case and agenda for the meeting to keep us on track.

I continued to work on the case throughout the weekend. I worked on cross examination and developed my opening statement for the case. I spoke with our investigator and our DNA expert. I also had several conversations with Mr. Martinez regarding trial strategy and a potential plea. My focus was on efforts that had to be undertaken to try the case. My instruction to ████████ from January 12 was not on my mind.

On Tuesday morning I set about finalizing the agenda and relevant materials for the 1 p.m. strategy meeting. I finished those materials mid-day and held the meeting, which lasted several hours.

Also on Tuesday, ████████ reviewed her action items for the day from the attorneys to whom she reports. By way of background, ████████ reports to several attorneys in my office. She has been my assistant for three years. She is expeditious, focused and efficient. Indeed, a member of your court staff, ████████, has often remarked about ████████ speed, attention and diligence in accomplishing tasks. It is a strength. Here, unfortunately, it worked to our detriment.

From working with me ████████ knew that I strive to have a high degree of contact and to provide all relevant information to my clients. Accordingly, knowing that I was tied up on other tasks, she assembled what she viewed to be trial materials relevant to Mr. Martinez's case and made sure they were sent out before the lunch hour to ensure their delivery to Mr. Martinez on January 17, in accord to my instruction. Regrettably, I did not review the materials. While I am unsure what materials ████████ sent to Mr. Martinez, I believe it included either the Defendant's or the Government's trial exhibits, as both parties had protected



materials in those submissions to Court in anticipation of the cross examination of cooperating witnesses and law enforcement.[2]

The following day, January 18, 2023, I saw Mr. Martinez at the Courthouse for the final status conference in the case. I do not know if he received any materials from me by that time or if he had reviewed them. While we discussed the strengths and weaknesses of his case and potential trial strategy regarding specific issues, I assumed his knowledge of cooperating witnesses came from the Government's January 5 reverse proffer and not from any other source. Also, in accord to the Protective Order, it was permissible for Mr. Martinez to know the names and identities of cooperating witnesses at that time.

## IV.    Resolution of the Case

In the week that followed, I continued to work feverishly to prepare the case for trial and also to work on a plea. The plea was finalized after several late evening conversations with federal prosecutors and Mr. Martinez on January 23, 2023 – the night before jury selection. Mr. Martinez entered into the plea agreement on January 24, 2023.

While there are contested issues that remain for sentencing, my conversations with Mr. Martinez to prepare for sentencing have not involved materials that are in any way protected. Since learning of the potential disclosure I have ceased all communication with Mr. Martinez.

---

[2] It is important to note that the protected materials shared by the Government in this case were not marked "protected" in any way. That is in stark contrast to other recent federal cases we have worked on involving protected materials. For instance, in *United States v. Gerace*, all protected materials have a watermark indicating the attorney they were disclosed to and the level of protection they are afforded under the protective order. In *United States v. Abughamen*, all protected materials have a watermark indicating they are produced in accord to the protective order in the case and cannot be disseminated. The materials in Mr. Martinez's case did not bear any such designation or mark. In speaking with ███████, prior to this event she believed all materials produced by protective order were to be marked as protected in some way. While this misapprehension does not excuse any potential disclosure, it does explain why the potential production of trial exhibits to the defendant did not orient ███████ to this potential issue.



## V.     Discovery of the Issue and Next Steps

I had no knowledge that any protected materials may have been disseminated until approximately three weeks ago when Mr. Martinez informed me his cell was the subject of a federal search warrant. I contacted Mr. Glaberson who gave me a brief overview of the issue. Simply stated, I was shocked to learn that Mr. Martinez might have had protected materials. At no time did I intend to share protected materials with him. At no time did I believe he had protected materials with him.

After my conversation with Mr. Glaberson, I reviewed my law firm's file in this matter and identified the above potential disclosure. That was the first time I realized it was possible that Mr. Martinez had received protected materials.

After my review, I reached out to Marianne Mariano, the Federal Public Defender for the Western District of New York, to discuss protocols her office uses to ensure that protected materials are not disseminated. I have adopted several of those protocols in my practice. I have also discussed this issue with ████████, who is both extremely upset and remorseful.

## VI.     Conclusion

I have been a member of the defense bar and a proud member of the CJA panel for several years. I undertake CJA work because I believe it is important that indigent individuals facing serious charges have competent, thorough and appropriate representation in the federal courthouse. I take my ethical obligations – both to my clients and to the Court – very seriously. At no time did I intentionally or willfully ignore or disregard the Protective Order in this case. Rather, to the extent protected material may have been disclosed in this case, it was due to my desire to fulfill my obligation to keep my client apprised and informed about issues in his case and a miscommunication between my assistant and me. I am sorry for this oversight and for any disclosure that occurred. With input from other practitioners, I have adopted practices and protocols to make sure this disclosure does not occur in the future.

Thank you for your time and attention to this matter. I am happy to respond to further inquiries from the Court. Given the nature and circumstances of this issue, however, I continue to respectfully request that this matter be addressed ex parte and under seal.



Respectfully,

**LIPPES MATHIAS LLP**

*s/ Eric M. Soehnlein*

Eric M. Soehnlein